**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
CENTRAL DIVISION**

| | |
|---|---|
| PHARMACEUTICAL RESEARCH AND MANUFACTURERS OF AMERICA, | ) ) ) |
| *Plaintiffs*, | ) ) |
| vs. | ) Civil Action No. 2:24-cv-04144-MDH ) |
| ANDREW BAILEY, in his official capacity as ATTORNEY GENERAL OF THE STATE OF MISSOURI; JAMES L. GRAY, in his official Capacity as President of the Missouri Board of Pharmacy; CHRISTIAN S. TADRUS, in his official capacity as Vice-President of the Missouri Board of Pharmacy; and DOUGLAS R. LANG, ANITA K. PARRAN, COLBY GROVE, TAMMY THOMPSON, and DARREN HARRIS, in their official capacities As members of the Missouri Board of Pharmacy, | ) ) ) ) ) ) ) ) ) ) ) ) |
| *Defendants*. | ) ) |

**VERIFIED MOTION TO INTERVENE AND SUGGESTIONS IN
SUPPORT OF MISSOURI HOSPITAL ASSOCIATION AND MISSOURI PRIMARY
CARE ASSOCIATION**

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....................................................................................................... iii

INTRODUCTION ................................................................................................................... 1

BACKGROUND ..................................................................................................................... 3

I.      The Section 340 B Program ....................................................................................... 3

II.     Proposed Intervenors ................................................................................................. 4

        a.     Missouri Hospital Association ......................................................................... 4

        b.     Missouri Primary Care Association .................................................................. 6

III.    Procedural History ..................................................................................................... 8

ARGUMENT ......................................................................................................................... 9

I.      Proposed Intervenors' Have Standing ....................................................................... 9

        a.     Article III standing ......................................................................................... 9

        b.     Associational standing .................................................................................. 10

II.     Proposed Intervenors Should be Permitted to Intervene as a Matter of Right ............... 12

        a.     Proposed Intervenors' Motion to Intervene is timely ......................................... 12

        b.     Proposed Intervenors have a legitimate interest in the lawsuit ........................... 12

        c.     Proposed Intervenors are so situated that disposing of the lawsuit without Proposed Intervenors would impair or impede its ability to protect its interests ...................................................................................................... 13

        d.     Proposed Intervenors are not adequately represented by the existing parties ........................................................................................................ 14

III.    Alternatively, Proposed Intervenors Should be Permitted to Intervene in the Lawsuit by Permissive Intervention ................................................................................. 14

IV.    Positions of the Parties....................................................................................................15

CONCLUSION.................................................................................................................................15

HB: 4861-2803-5563.3

# TABLE OF AUTHORITIES

**Page**

**Cases**

*AbbVie Inc. v. Murrill*, 6:23-CV-01307 (W.D. La. Mar. 7, 2024)...............................................3

*AstraZeneca Pharmaceuticals LP v. Landry*, 6:23-CV-01042
    (W.D. La. Nov. 9, 2023) ...........................................................................................3

*AstraZeneca Pharmaceuticals LP v. McClain*, 4:24-CV-00268
    (E.D. Ark. Aug. 13, 2024) .........................................................................................3

*Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304
    (8th Cir. 1995)...........................................................................................................13

*Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of the Dist. of the
    City of St. Louis*, 894 F.3d 959 (8th Cir. 2018)......................................................9

*Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992) ...............................................................9

*Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994
    (8th Cir. 1993)....................................................................................................12, 14

*Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969 (8th Cir. 2014) .........................10

*Nosker v. Gill Bros. Trucking*, 2006 WL 1798089, at *5 (W.D. Mo. June 28, 2006)...............15

*Novartis Pharmaceuticals Corporation v. Bailey et al*, No. 2:24-cv-04131-MDH
    (W.D. Mo.).......................................................................................................2, 3, 4, 9

*Pharmaceutical Research & Manufacturers of America v. Landry*,
    6:23-CV-00997 (W.D. La. Nov. 8, 2023).................................................................3

*Pharmaceutical Research and Manufacturers of America v. McClain*,
    4:21-CV-00864 (E.D. Ark. May 3, 2022)................................................................2

*Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*,
    600 U.S. 181 (2023).................................................................................................10

*United States v. Union Elec. Co.*, 64 F.3d 1152 (8th Cir. 1995) ......................................12, 14

*Worth v. Jacobson*, 108 F.4th 677, 685–86 (8th Cir. 2024) .....................................................10

HB: 4861-2803-5563.3

**Rules**

Federal Rules of Civil Procedure 24(a)(2)..............................................................1, 12, 13
Federal Rules Civil Procedure 24(b)........................................................................14, 15
Federal Rules of Civil Procedure Rule 24(b)(1) .....................................................14
Federal Rules of Civil Procedure Rule 24(b)(1)(B)................................................1

**Regulations**

42 U.S.C. § 256B ......................................................................................................1
42 U.S.C. § 256b(a)(1)..............................................................................................3
42 U.S.C. § 1396r-8(a)(1) .........................................................................................3

**Constitution**

Supremacy Clause of the United States Constitution ................................................8
Commerce Clause of the United States Constitution.................................................8

**Other**

Congressional Research Service, *Litigation Continues Over Use of Contract
    Pharmacies in 3430B Drug Discount Program* (May 23, 2024) .................................3, 4

HB: 4861-2803-5563.3

# INTRODUCTION

Proposed Intervenors Missouri Hospital Association ("MHA") and Missouri Coalition for Primary Care d/b/a Missouri Primary Care Association ("MPCA") (collectively, "Proposed Intervenors") move this Court, under Rule 24(a)(2) and 24(b)(1)(B) of the Federal Rules of Civil Procedure, for leave to intervene so they can defend Missouri Senate Bill 751 ("S.B. 751") in this action brought by Plaintiff, Pharmaceutical Research and Manufacturers of America ("PhRMA" or "Plaintiff").

Under 42 U.S.C. § 256b (or "340B") some health care providers (known as "covered entities") are entitled to discounted drugs. Covered entities contract with pharmacies to receive and dispense 340B drugs on behalf of the covered entities, commonly referred to as "contract pharmacies." S.B. 751 amends chapter 376 of the Revised Statutes of Missouri to protect the delivery of 340B drugs to contract pharmacies on behalf of covered entities. In so doing, S.B. 751 protects hospitals and federally qualified health centers ("FQHCs"), as well as their patients, from drug manufacturers' restrictions on the number of contract pharmacies a hospital or FQHC can use. PhRMA seeks a declaration that S.B. 751 is preempted by federal law and that it violates the dormant Commerce Clause, or, alternatively, that S.B. 751 does not apply in circumstances where manufacturers offer 340B-priced drugs for sale with conditions and covered entities do not accept those conditions. *See generally* ECF No. 1. PhRMA also seeks injunctive relief barring the Missouri Attorney General and Missouri Board of Pharmacy from enforcing S.B. 751. ECF No. 1 at p. 44.

Proposed Intervenors represent the interests of hospitals and FQHCs and, absent S.B. 751, they will be harmed by PhRMA members' restrictions on contract pharmacies. Proposed Intervenors' members benefit from the protections afforded to them under S.B. 751. Though

none of its members were identified in PhRMA's Complaint, at least one member of PhRMA, Novartis Pharmaceutical Corporation,[1] has pursued its own action to strike down S.B. 751. *See Novartis Pharmaceuticals Corporation v. Bailey et al*, No. 2:24-cv-04131-MDH (W.D. Mo.). If granted, PhRMA's request that S.B. 751 be invalidated would apply to *all* pharmaceutical manufacturers, including those that are currently imposing contract pharmacy restrictions in Missouri despite the passage of S.B. 751.

Members of MHA and MPCA participate in the 340B Program and rely on contract pharmacies to meet the needs of their patients and communities. Proposed Intervenors are entitled to intervene as a matter of right because they and their members have been injured by the limitations that drug manufacturers—many of whom are members of PhRMA—have placed on contract pharmacies. Proposed Intervenors thus have a significant interest in the viability of S.B. 751. The existing Defendants will not adequately represent the Proposed Intervenors' distinct interests, which pertain to the economic dangers Proposed Intervenors' members may face, as well as their missions in providing quality, affordable healthcare that is accessible to all Missourians. Alternatively, the Court should grant permissive intervention because Proposed Intervenors share common questions of fact and law with the action, and there will be no undue delay or prejudice to the adjudication of the original parties' rights.

In actions where drug manufacturers and PhRMA challenged state laws that protect the delivery of 340B drugs to contract pharmacies, district courts in other states have granted intervention motions filed by parties similar to Proposed Intervenors. *See e.g.,* Order Granting Mot. to Intervene, *Pharmaceutical Research and Manufacturers of America v. McClain*, 4:21-CV-00864 (E.D. Ark. May 3, 2022), ECF No. 22; Order Granting Mot. to Intervene,

---

[1] https://phrma.org/en/About.

*AstraZeneca Pharmaceuticals LP v. McClain*, 4:24-CV-00268, (E.D. Ark. Aug. 13, 2024), ECF No. 50; Order Granting Motion to Intervene, *Pharmaceutical Research & Manufacturers of America v. Landry*, 6:23-CV-00997 (W.D. La. Nov. 8, 2023) ECF No. 26; Order Granting Motion to Intervene, *AstraZeneca Pharmaceuticals LP v. Landry*, 6:23-CV-01042 (W.D. La. Nov. 9, 2023), ECF No. 29; Order Granting Motion to Intervene *AbbVie Inc. v. Murrill*, 6:23-CV-01307 (W.D. La. Mar. 7, 2024), ECF No. 58. The Court should do the same here.

## BACKGROUND

### I.     The 340B Program

Congress established the 340B drug pricing program in 1992 to protect safety-net providers, including hospitals and FQHCs, from escalating drug costs. *See* 42 U.S.C. § 256b(a)(1), 42 U.S.C. § 1396r-8(a)(1) (the "340B Program"). It requires drug manufacturers to offer discounts on covered outpatient drugs to statutorily defined safety-net providers as a condition of the manufacturers' drugs being reimbursed by Medicaid and Medicare Part B. The program was later expanded to allow critical access hospitals to participate. In *Pharm. Rsch. & Manufacturers of Am. v. McClain*, 95 F.4th 1136, 1139 (8th Cir. 2024), the Eighth Circuit described the program in the following manner:

> Section 340B incentivizes pharmaceutical manufacturers to provide qualified health care providers, referred to as 'covered entities,' with pricing discounts on certain drugs prescribed to individuals and families whose incomes fall below the federal poverty level. Since the beginning, covered entities have contracted with outside pharmacies, referred to as "contract pharmacies," for the distribution and dispensation of 340B drugs. This is in large part due to the fact that building or maintaining a pharmacy is cost-prohibitive for many covered entities. Additionally, the outsourcing of pharmacy services has allowed for drug dispensation closer to where low-income patients reside.

> According to the Congressional Research Service, "the majority of covered entities contract with retail pharmacies, known as contract pharmacies, who then sell drugs to patients"

on behalf of the covered entities, rather than distribute drugs through in-house pharmacies.[2] The 340B Program is designed to help covered entities to "stretch scarce federal resources as far as possible, reaching more eligible patients and providing more comprehensive services." H.R. Rep. No. 102-384, pt. 2, at 11 (1992) (Conf. Rep.). Because of the 340B Program, covered entities are able to save funds that are then used to provide necessary services to their communities. In 2020, drug manufacturers began to restrict covered entities from using contract pharmacies to dispense 340B drugs. For example, as of the date of this filing, PhRMA member Novartis refuses access to 340B priced drugs at contract pharmacies if a covered entity operates its own retail pharmacy, and limits access to one contract pharmacy for covered entities that do not operate their own retail pharmacies. Novartis does not create any exception in its policy for Missouri or other states that have passed laws similar to S.B. 751. *See* Novartis, 340B Contract Pharmacy Pricing (Apr. 3, 2023), available at https://340besp.com/resources. Restrictions "generally aim to limit covered entities to distribution to one contract pharmacy" and have financial consequences for entities who will have less access to 340B drugs and therefore are unable to generate 340B savings from them.[3]

## II.     Proposed Intervenors

### a.     Missouri Hospital Association

MHA is a private, not-for-profit member organization whose mission is to shape an environment that enables member hospitals and healthcare systems to meet their evolving

---

[2] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024), https://crsreports.congress.gov/product/pdf/LSB/LSB11163.
[3] Congressional Research Service, *Litigation Continues Over Use of Contract Pharmacies in 3430B Drug Discount Program* (May 23, 2024) https://crsreports.congress.gov/product/pdf/LSB/LSB11163.

4

missions so that they may improve the health of their patients and community. MHA has 139 member hospitals. MHA represents every acute care hospital in the state, as well as most of the federal and state hospitals and specialty hospitals, including rehabilitation and psychiatric facilities. MHA advocates for policies that improve health and health care, provides representation and advocacy on behalf of its members, and seeks to educate its members, the public and the media, and legislative representatives about health care issues.

Approximately half of MHA's members are "covered entities" in the 340B program. The 340B program was intended to provide financial relief to hospitals, clinics and other eligible participating organizations that serve large numbers of uninsured and low-income patients. The savings provided through the 340B program subsidize patient care, including labor and delivery, pharmacy access and community-based services offered by hospitals and other providers. A majority of MHA's 340B members, such as Mercy Hospital Joplin, rely on multiple contract pharmacies to order, receive, and dispense medications for their patients. *See* Exhibit A, Declaration of Andrew Wheeler ("Wheeler Decl.") Ex. 1, MHA Covered Entities with Contract Pharmacies. MHA estimates that as much as 20% of the 340B benefit may be derived through contract pharmacies.

Reducing access to 340B Program savings means that hospitals are unable to underwrite critical but under-reimbursed services lines. The loss of 340B savings because of contract pharmacy restrictions threatens the financial viability of MHA's members. Even with the benefits of the 340B program, eligible Missouri hospitals realize very thin margins, averaging 0.8% in 2022. Without 340B savings, many small and rural hospitals would either operate at a loss or be forced to reduce or eliminate services. For others, the 340B savings allow the hospital to stay in operation. MHA's covered entity members that use more than one contract pharmacy

HB: 4861-2803-5563.3

(*see* Ex. A, Wheeler Decl.) have been or will be damaged by drug manufacturers' limitations (including those whose interests PhRMA represents) on contract pharmacies in Missouri. These same entities now stand to benefit from S.B. 751's protections.

The ultimate issue in this case is whether S.B. 751 will protect covered entities from manufacturers that place restrictions on access to 340B drugs through contract pharmacies. Novartis, a member of PhRMA, has a policy in place that covered entities (including MHA's members) that operate their own retail pharmacies may not access 340B drugs at any contract pharmacy and, if the covered entity does not operate a retail pharmacy, it may access 340B drugs at only one contract pharmacy.[4] Novartis also refuses 340B pricing for drugs shipped to contract pharmacies more than 40 miles from hospitals' parent sites. But S.B. 751 requires drug manufacturers to deliver 340B-priced drugs to *any* contract pharmacy with which a covered entity contracts. This access to 340B drugs is critical for MHA members that are located in rural areas, particularly because they serve patients within as much as a 75-mile radius. S.B. 751 preserves the right of MHA members' patients to obtain needed pharmaceuticals near their homes.

### b.    Missouri Primary Care Association

MPCA was founded in 1984 and is a private, not-for-profit member organization. Its mission is to be Missouri's leader in shaping policies and programs that improve access to high-quality, community-based, and affordable primary health services. MPCA is the recognized voice of Missouri's community health centers (or CHCs or FQHCs), which are local, non-profit, community-driven health care providers that serve low income and medically under-served communities. MPCA's members provide affordable primary care and preventative services, and

---

[4] Novartis' policy currently applies only to hospitals.

often provide on-site dental, pharmaceutical, mental health, and substance use disorder services. MPCA partners closely with its community health centers; federal, state, and local governments; and private organizations to support resources, programs, and policies that assure access to health care. All of MPCA's members are "covered entities" in the 340B program. A majority of MPCA's members, such as Southeast Missouri Health Network and Compass Health, Inc., rely on more than one contract pharmacy to fill prescriptions for their patients. *See* Exhibit B, Declaration of Joseph Pierle ("Pierle Decl.") Ex. 1, MPCA Covered Entities and Contract Pharmacies.

By law, FQHCs are required to invest every penny of 340B savings into activities that further the purpose of providing primary care without regard to the patient's ability to pay. MPCA's members abide by that promise by using 340B savings to expand non-revenue generating services like community health workers, specialty care services, and extended hours of operation to better meet patient needs. MPCA's members rely on contract pharmacies to expand access for patients. Contract pharmacies dispense 340B drugs on behalf of covered entities to their patients. Some MPCA members lack the financial resources to open an in-house pharmacy and must solely rely on contract pharmacies to order, receive, and dispense 340B medications that their patients need. Without 340B savings and the ability to utilize contract pharmacies, MPCA members' ability to provide critical resources, health care, and discounted prescription drugs is in danger. PhRMA members have unilaterally changed their contract pharmacy restrictions in the past and could change their policies at any point to apply it to FQHCs. MPCA's members that use more than one contract pharmacy (*see* Ex. B, Pierle Decl. Ex. 1 MPCA Covered Entities and Contract Pharmacies) have already been or will be damaged by drug manufacturers' limitations on contract pharmacies and stand to benefit from S.B. 751's

HB: 4861-2803-5563.3

protections. Accordingly, MPCA and its members need the protections of S.B. 751 and will be harmed if PhRMA succeeds in striking down the law.

**III.     Procedural History**

On August 22, 2024, PhRMA filed the Complaint against Defendants Andrew Bailey, James L. Gray, Christian S. Tadrus, Douglas R. Lang, Anita K. Parran, Colby Grove, Tammy Thompson, and Darren Harris (the "Defendants")—all in their official capacities. ECF No. 1. In the Complaint, PhRMA alleges that S.B. 751 is unconstitutional because (1) it is preempted by federal law governing the 340B program under the Supremacy Clause of the United States Constitution, and (2) it is an unconstitutional extraterritorial regulation in violation of the Commerce Clause. *See generally* ECF No. 1. Defendants just filed their Motion to Dismiss on October 25, 2024. ECF Nos. 27-28. A motion to reassign/transfer the case to the Eastern District of Missouri filed by the Defendants is pending. ECF No. 18. No briefing schedule has been set.

8

HB: 4861-2803-5563.3

## ARGUMENT

### I. Proposed Intervenors' Have Standing.

#### a. Article III standing.

The Eighth Circuit has held that an intervenor must establish Article III standing and may establish standing based on well-pleaded allegations. *See Liddell v. Special Admin. Bd. of the Transitional Sch. Dist. of the Dist. of the City of St. Louis*, 894 F.3d 959, 964-65 (8th Cir. 2018). To have Article III standing, a party must show an injury in fact, causation, and redressability. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).

Drug manufacturers, including members of PhRMA, have impaired Proposed Intervenors members' use of contract pharmacies, thus depriving their patients of access to medications covered under the 340B program and all savings and revenue their members use to provide critical services to their communities. At least one member of PhRMA, Novartis, is currently pursuing its own action in Missouri to strike down S.B. 751. *See Novartis Pharms. Corp. v. Bailey et al*, No. 2:24-cv-04131-MDH (W.D. Mo.). Novartis also has a policy in place that covered entities (including MHA's members) that operate their own retail pharmacies may not access 340B drugs at *any* contract pharmacy and, if the covered entity does not operate a retail pharmacy, it may access 340B drugs at only *one* contract pharmacy. Contract pharmacies must also be located within 40 miles from hospitals' parent sites. And even though some manufacturers currently exempt all covered entities in Missouri due to the passage of S.B. 751, manufacturers have changed their policies in the past and could unilaterally do so again at any time, including during the pendency of this action. Without access to 340B drugs and the attendant savings—access that S.B. 751 protects—Proposed Intervenors' continued ability to provide critical services and medications is in danger.

HB: 4861-2803-5563.3

PhRMA's attack on S.B. 751 threatens the protections for delivery and accessibility of 340B drugs to contract pharmacies, which are essential to the continued viability of the operations and services provided by Proposed Intervenors' members. Members of Proposed Intervenors have and will experience financial harm due to drug manufacturers' policies regarding contract pharmacies, and will experience additional economic harm if S.B. 751's protections are upended, in addition to the further erosion of their ability to provide quality health care to Missourians. Proposed Intervenors can satisfy the causation requirement because if PhRMA is successful, the Proposed Intervenors could trace their injuries to the Defendants through the would-be court order barring enforcement of S.B. 751. *See Nat'l Parks Conservation Ass'n v. U.S. E.P.A.*, 759 F.3d 969, 974 (8th Cir. 2014) (holding that the causation element is satisfied because the Defendants would be compelled by court order to cause the alleged injury to the intervenors). Finally, the harms imposed by PhRMA and its members' policies are redressable by this Court because a favorable decision would allow S.B. 751 to stand, which would prohibit PhRMA and/or its members from restricting distribution of 340B program drugs to contract pharmacies in the state of Missouri.

> ### b. Associational standing.

To have associational standing, an organization must show: "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Worth v. Jacobson*, 108 F.4th 677, 685–86 (8th Cir. 2024) (quoting *Students for Fair Admissions, Inc. v. Pres. and Fellows of Harvard College*, 600 U.S. 181, 199 (2023)). Both Proposed Intervenors and their individual members meet these requirements. For example, Mercy Hospital Joplin, an MHA member, is a covered

entity that uses multiple contract pharmacies and is therefore harmed by PhRMA members' contract pharmacy restrictions. *See* Ex. A, Wheeler Decl., Ex. 1, MHA Covered Entities with Contract Pharmacies. Mercy Hospital Joplin stands to benefit from the protections afforded by S.B. 751, and thus meets the standing requirements to sue in its own right. MHA's intervention in this action protects its members interests, which are also interests germane to MHA's purpose. MHA's mission is to shape an environment that enables member hospitals and healthcare systems to fulfill their current and future missions – which improve the health of their patients and community. The use of contract pharmacies, and the savings attained by MHA's members in so doing, allows MHA's members to improve the health of their patients and community.

Similarly, Southeast Missouri Health Network and Compass Health, Inc, both members of MPCA, are covered entities that use multiple contract pharmacies and are therefore harmed by PhRMA members' contract pharmacy restrictions. *See* Ex. B, Pierle Decl., Ex. 1, MPCA Covered Entities with Contract Pharmacies. Southeast Missouri Health Network and Compass Health, Inc. stands to benefit from the protections afforded by S.B. 751, and thus meet the standing requirements to sue in their own right. MPCA's intervention in this action protects its members interests, which are also interests germane to MPCA's purpose. MPCA's mission is to shape policies and programs that improve access to high-quality, community-based, and affordable primary health services. By virtue of the grant funding and related federal benefits that MPCA members receive, each MPCA member is required to serve low-income and medically underserved communities. Without the ability to access 340B drugs at contract pharmacies, the ability of MPCA's members to continue providing high-quality and affordable primary health services and medication to underserved populations in Missouri is in jeopardy.

HB: 4861-2803-5563.3

Proposed Intervenors' intervention in this action does not require the participation of individual members in the lawsuit.

## II.     Proposed Intervenors Should be Permitted to Intervene as a Matter of Right.

Rule 24(a)(2) allows a party to timely intervene as a matter of right if: (1) the motion is timely; (2) the intervenor "claims an interest relating to the property or transaction that is the subject of the action"; (3) disposition of the action "may as a practical matter impair or impede the movant's ability to protect its interest"; and (4) the existing parties do not "adequately represent" the interest. Fed. R. Civ. P. 24(a)(2).

### a.     Proposed Intervenors' Motion to Intervene is timely.

"In determining timeliness, factors that bear particular consideration are the reason for the proposed intervenor's delay in seeking intervention, how far the litigation has progressed before the motion to intervene is filed, and how much prejudice the delay in seeking intervention may cause to other parties if intervention is allowed." *Mille Lacs Band of Chippewa Indians v. State of Minn.*, 989 F.2d 994, 998 (8th Cir. 1993). This action recently commenced—*days* before S.B. 751 went into effect—and very little litigation has occurred since. A proposed scheduling order is not due until December 9, 2024. ECF No. 29. Defendants just filed their Motion to Dismiss on October 25, 2024. ECF Nos. 27-28. Proposed Intervenors have not delayed seeking intervention in this action, and no prejudice will occur to PhRMA regarding the Court's consideration or granting of this motion.

### b.     Proposed Intervenors have a legitimate interest in the lawsuit.

The applicant for intervention must have an interest in the subject matter of the litigation, *i.e.*, an interest that is "direct," as opposed to tangential or collateral. *United States v. Union Elec. Co.*, 64 F.3d 1152, 1161 (8th Cir. 1995). Furthermore, that interest must be "recognized," i.e.,

both "substantial" and "legally protectable." *Id.* Proposed Intervenors' members participate in the 340B Program and either do not have in-house pharmacies and use contract pharmacies or choose to use contract pharmacies to ensure their patients are able to continue receiving discounted medications near their homes. The savings that Proposed Intervenors' members realize due to the 340B Program allows them to provide services to their patients and communities they would otherwise not be able to provide. PhRMA is challenging S.B. 751, which protects delivery of 340B drugs to members' multiple contract pharmacies and their ability to provide critical services to their patients and communities.

### c.  Proposed Intervenors are so situated that disposing of the lawsuit without them would impair or impede their ability to protect their interests.

S.B. 751 protects Proposed Intervenors' members ability to deliver 340B drugs to contract pharmacies (*see* Ex. A, Wheeler Decl., Ex. B, Pierle Decl.) and to provide affordable medications to their patients, as well as the ability to use the savings from 340B drugs dispensed at contract pharmacies to supplement the care they provide to indigent patients. PhRMA is asking this Court to invalidate S.B. 751, which would prevent critical access to affordable medications to the patients of Proposed Intervenors' members and will reduce critical services by reducing savings from 340B drugs that are used to subsidize these services. Rule 24(a)(2) requires only that disposition of the action "may as a practical matter impair or impede the applicant's ability to protect [its] interest." *Kansas Pub. Emps. Ret. Sys. v. Reimer & Koger Assocs., Inc.*, 60 F.3d 1304, 1307 (8th Cir. 1995). Without S.B. 751's protections for the delivery of 340B drugs to contract pharmacies, Proposed Intervenors' members are in danger of not being able to meet the needs of their patients or the communities in which they serve.

HB: 4861-2803-5563.3

### d. Proposed Intervenors are not adequately represented by the existing parties.

Finally, Proposed Intervenors satisfy the "minimal burden" required to show that their interests are "inadequately represented by the existing parties" because the presumption of adequate representation when the government is a party does not apply here. *Mille Lacs*, 989 F.2d at 999; *Union Elec. Co.*, 64 F.3d at 1169). Proposed Intervenors' interests are plainly not aligned with PhRMA or its members' interests. And while Defendants have a general interest in protecting the constitutionality of duly enacted state laws, the Proposed Intervenors have more specific economic and mission-based interests in the viability of S.B. 751 that are otherwise not encompassed by Defendants' interests in protecting the validity of state laws. MHA and MPCA's members are the entities that benefit from the 340B Program, are harmed by drug manufacturers' actions to block shipment of 340B medications to their contract pharmacies, are the benefactors of S.B. 751's protections to deliver 340B drugs to contract pharmacies, and are the entities providing care to low-income and medically under-served Missourians. Moreover, Defendants have not taken any enforcement action concerning S.B. 751 to date, even though at least some of PhRMA's suspected members have failed to change their contract pharmacy restrictions despite S.B. 751 going into effect approximately two months ago. As such, Proposed Intervenors' interests are different than Defendants' and will not be adequately protected by Defendants.

### III. Alternatively, Proposed Intervenors Should be Permitted to Intervene in the Lawsuit by Permissive Intervention.

While Proposed Intervenors should be permitted to intervene in this matter as of right, in the alternative, Proposed Intervenors should be allowed to intervene pursuant to Federal Rules of Civil Procedure Rule 24(b)(1). Under Rule 24(b) of the Federal Rules of Civil Procedure, upon

HB: 4861-2803-5563.3

timely motion, the Court may permit a party to intervene if the party "has a claim or defense that shares with the main action a common question of law or fact." Fed. R. Civ. P. 24(b). "The principal consideration in ruling on a Rule 24(b) motion is whether the proposed intervention would unduly delay or prejudice the adjudication of the parties' rights." *Nosker v. Gill Bros. Trucking*, 2006 WL 1798089, at *5 (W.D. Mo. June 28, 2006). Here, the motion is timely, and there will be no undue delay or prejudice to any of the parties for the reasons set forth above in Argument Section II(a). Proposed Intervenors will abide by the deadlines already set by the Court. Proposed Intervenors will share common questions of law and fact with Defendants regarding the claims that PhRMA raises in the Complaint challenging the constitutionality of S.B. 751.

## IV.     Positions of the Parties

The Defendants have stated to undersigned counsel that they have no position on the motion. PhRMA's counsel has not yet stated PhRMA's position on the motion.

## CONCLUSION

For the reasons set forth herein, Proposed Intervenors Missouri Hospital Association and Missouri Primary Care Association pray that this Court grant them leave to intervene in this action as a matter of right, or, in the alternative, permit them to intervene, file their Motion to Dismiss and Suggestions in Support of the Motion to Dismiss, and grant any further relief the Court deems just and proper.

15

Dated: November 6, 2024.

Respectfully submitted,
HUSCH BLACKWELL LLP

By:    /s/ *Lowell D. Pearson*
Lowell D. Pearson, #46217
630 Bolivar Street Suite 300
Jefferson City, Missouri 65101
Phone: (573) 635-9118
Fax: (573) 634-7854
lowell.pearson@huschblackwell.com

Bryan Wade, #41939
3810 E. Sunshine Street, Suite 300
Springfield, MO 65809
Phone: (417) 268-4000
Fax: (417) 268-4040
Bryan.wade@huschblackwell.com

Alexa B. Barton, #71779
14606 Branch Street, Suite 200
Omaha, NE 68154
Telephone: (402) 964-5000
Facsimile: (402) 964-5050
allee.barton@huschblackwell.com

ATTORNEYS FOR INTERVENORS
MISSOURI HOSPITAL ASSOCIATION AND
MISSOURI PRIMARY CARE ASSOCIATION

POWERS PYLES SUTTER & VERVILLE, PC

By:    /s/ *Ronald S. Connelly*
RONALD S. CONNELLY*
1250 Connecticut Ave., NW
Eighth Floor
Washington, DC 20036
Phone: 202-872-6762
Fax: 202-466-6550
Email:  Ron.Connelly@PowersLaw.com

ATTORNEY FOR INTERVENORS
MISSOURI HOSPITAL ASSOCIATION AND
MISSOURI PRIMARY CARE ASSOCIATION
*Applying Pro Hac Vice

16

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of November 2024, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will automatically send a notice of electronic fling to all persons registered for ECF as of this date.

/s/ *Lowell D. Pearson*

HB: 4861-2803-5563.3

STATE OF MISSOURI )
                  )
COUNTY OF COLE    )

I, Jon Doolittle, President and CEO of the Missouri Hospital Association, having been duly sworn, attest that the statements in this Motion and Suggestions are true and accurate to the best of my knowledge.

_____
Jon D. Doolittle

Subscribed and sworn to before me this 6th day of November, 2024.

_____
Notary Public

My Commission Expires: March 10, 2028

TAMMY L. SIEBERT
Notary Public - Notary Seal
State of Missouri
Commissioned for Cole County
My Commission Expires: March 10, 2028
Commission Number: 12382833

STATE OF MISSOURI )
)
COUNTY OF COLE )

    I, Joseph Pierle, Chief Executive Officer of the Missouri Primary Care Association, having been duly sworn, attest that the statements in this Motion and Suggestions are true and accurate to the best of my knowledge.

                                     _____
                                             Joseph Pierle

    Subscribed and sworn to before me this ⁴ day of November, 2024.

                                     _____
                                            Notary Public

My Commission Expires: _01/27/2027_

TENA MARIE MCDONALD
Notary Public, Notary Seal
State of Missouri
Moniteau County
Commission # 19648254
My Commission Expires 01-27-2027